UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
In re: Gilat Satellite Networks, Ltd.,

                                          CV-02-1510
                                          (CPS)(SMG)

                                          MEMORANDUM
                                          OPINION AND
                                          ORDER

----------------------------------------X

SIFTON, Senior Judge.

     On January 17, 2003, eleven class actions alleging

violations of federal securities laws by defendants Gilat

Satellite Networks, Ltd. ("Gilat"), Yoel Gat, and Yoav Leibovitch

(collectively "defendants") were consolidated in this Court and

Leumi PIA Sector Fund, Leumi PIA World Fund, and Leumi PIA Export

Fund were appointed lead plaintiffs ("plaintiffs"). On May 13,

2003, plaintiffs filed a Consolidated Class Action Complaint

alleging violations of Section 10(b) of the Securities Exchange

Act of 1934 ("Exchange Act"), and Rule 10b-5 promulgated under

the Exchange Act, 17 C.F.R. § 240.10b-5. The complaint also

alleges against Gat and Leibovitch a violation of Section 20(a)

of the Exchange Act. On April 19, I certified a settlement class

and granted the parties' motions for preliminary approval of a

proposed Settlement Agreement, preliminary approval of a Plan of

Allocation of the settlement fund, and approval of the proposed

manner and form of Notice to the settlement class and of the

proposed Proof of Claim form. A Fairness Hearing was held on July

19, 2007 to consider final approval the settlement. On September

18, 2007, I granted the parties' motion for final approval of the
Settlement Agreement. Now before the Court is plaintiffs' motion
to authorize disbursement of the Net Settlement Fund to the
settlement class. For the reasons set forth below, the motion is
granted.

## BACKGROUND

Familiarity with the underlying facts and procedural history
of this case, as set forth in prior decisions of this Court, is
presumed.[1]

*Brief Summary of Allegations*

Defendant Gilat is an Israeli company that provides products
and services for satellite-based communications networks. The
Amended Complaint alleges that Gilat, its chief executive
officer, and its chief financial officer artificially inflated
Gilat's financial results during the class period by
misrepresenting transactions in violation of accounting
principles, including improper recognition of revenue on a number
of transactions. Plaintiffs further allege that defendants made
false and misleading statements during the class period regarding
a corporation formed by Gilat. Plaintiffs allege that class
members who purchased Gilat securities during the class period

---

[1] *See In re Gilat Satellite Networks, Ltd.*, 2005 U.S. Dist. LEXIS 41996
(E.D.N.Y. September 19, 2005) (motion to dismiss); *In re Gilat Satellite
Networks, Ltd.*, 2007 U.S. Dist. LEXIS 29062 (E.D.N.Y. April 19, 2007) (class
certification, approval of settlement agreement, plan of allocation, and
notice; *In re Gilat Satellite Networks, Ltd.*, Fed. Sec. L. Rep. (CCH) P94,385
(E.D.N.Y. September 18, 2007) (final approval of settlement).

paid artificially inflated prices as a result of these misrepresentations. The share prices dropped once the alleged fraud was revealed. Defendants have denied and continue to deny all allegations of wrongdoing.

*Settlement*

Settlement of this class action was approved by a Final Judgment and Order of Dismissal with Prejudice, dated September 20, 2007 ("Final Judgment"). Pursuant to the Final Judgment, I retained continuing jurisdiction over implementation of the settlement and any award or distribution of the settlement fund created by the Amended Stipulation and Agreement of Settlement (the "Stipulation"). Final Judgment at ¶ 14. On April 19, 2007, I entered an order preliminarily approving the Stipulation and directing that notice of the proposed settlement be given to the members of the class. *See* Preliminary Approval Order. Commencing May 9, 2007, the Claims Administrator, The Garden City Group, Inc. ("Claims Administrator"), distributed the Court-approved Notice of Pendency of Proposed Settlement of Class Action (the "Notice") and Proof of Claim to potential members of the Class. The Claims Administrator published the Summary Notice of Pendency and Proposed Settlement of Class Action for national distribution in the *Wall Street Journal* on May 23, 2007, *Globe* on May 21, 2007, *Ha'aretz* on May 22, 2007, and the *Jerusalem Post* on May 22, 2007.

*Terms of the Settlement*

The settlement class includes all persons and entities who acquired Gilat common stock between February 10, 2000 and Mary 31, 2002.[2] Notice of Settlement at ¶ 27 ("Notice"). The settlement amount is twenty million dollars, which, combined with interest, makes up the gross settlement fund. Stipulation at ¶ 5. The net settlement fund is the gross settlement fund less all taxes, costs, fees, and expenses associated with administration of the settlement. *Id*. at ¶ 7. The Claims Administrator is tasked with determining each authorized claimant's pro rata share of the net settlement fund, calculating losses recognized as compensable under the settlement. *Id*. at ¶ 13. A "Recognized Loss" is the amount of loss recognized as compensable for any single transaction. Notice at ¶ 37.

The Plan of Allocation separates claims based on the date on which the acquired shares were purchased. Plaintiffs allege that the artificial inflation of stock prices began on or before February 10, 2000, when defendants made misleading statements. Notice at ¶ 38 (section on Plan of Allocation). The first alleged partial disclosure of the fraud occurred on March 9, 2001;

---

[2]The term "acquired" is further described as follows: "[c]ommon stock (and other securities) may be acquired by means other than purchase on the open market. Examples of other methods of acquisition include acquiring stock by exercising warrants or stock options, or acquiring stock through an employer stock distribution. The Class is defined to include class members who acquired Gilat common stock through such means other than open market purchases." Notice at ¶ 27, n.3.

following the disclosure, the share price fell. *Id*. Claimants who bought stock during the period from February 10, 2000 and March 9, 2001 and sold it after March 9, 2001, and before the end of the class period, have an eligible claim. However, the Plan of Allocation states that for stock purchased after February 10, 2000 and sold before March 9, 2001, there shall be no Recognized Loss, because the inflation of the stock price due to allegedly false statements did not change during that period. *Id*. Plaintiffs allege that the next partial disclosure of the fraud took place on March 12, 2001, the third partial disclosure of fraud took place on October 2, 2001, and the final disclosure of alleged fraud took place on May 31, 2002. Stock purchased and sold within a single period between disclosures does not give rise to a Recognized Loss pursuant to the plan of allocation. *Id*. Stock purchased before the commencement of the class period does not give rise to a Recognized Loss. *Id*. at ¶ 39.

Claimants are required to submit a Proof of Claim with supporting documentation by September 3, 2007. Stipulation at ¶ 19. The Settlement specifies that class members who do not submit timely, acceptable, and valid proofs of claim and release are not authorized claimants and will not share in settlement proceeds, but are nevertheless bound by the settlement and order and final judgment of the court dismissing the action. *Id*. at ¶ 17.

Distribution of the net settlement fund may only take place

after: all claims have been processed and all claimants whose claims have been rejected have been notified and provided the opportunity to be heard; all objections have been resolved by the Court and all appeals resolved; all matters with respect to attorneys' fees, costs, and disbursements have been resolved by the Court; and all costs of administration have been paid. Stipulation at ¶ 23.

The Plan of Allocation provides that, if any funds remain in the net settlement fund by reasons of uncashed checks or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have class members cash their checks, any balance remaining one year after the initial distribution of such funds shall be redistributed to class members who have cashed their checks and who would receive at least $5.00 from the redistribution. No payments are to be made on a recognized claim where the potential distribution amount is less than $5.00. *Id*. at ¶ 39. Notice at ¶ 43. If, any unclaimed funds remain six months after such redistribution, then the balance shall be contributed to a non-sectarian, not-for-profit 501(c)(3) organization(s) designated by agreement between the parties' counsel. *Id.*

*Procedures Followed in Processing Claims*

Pursuant to the Stipulation and my prior orders, the Claims Administrator, under the supervision of plaintiffs' Lead Counsel,

determined which claims submitted by claimants were authorized claims.

Under the terms of the Stipulation, class members were required to submit a proof of claim in order to obtain their share of the net settlement fund. Revised Affidavit of Ellen E. Riley at ¶ 3 ("Riley Aff."). The Claims Administrator conferred with co-lead counsel to define guidelines for claims processing and developed programs for entry of transaction information received with the proofs of claim. *Id*. at ¶ 4. Toll-free phone lines were established in the United States and Israel to provide potential claimants with information about the settlement and to accommodate plaintiffs seeking proof of claim forms. *Id*. The Claims Administrator sorted incoming claims and administrative requests; in cases where mail was returned unanswered, better addresses were sought for potential claimants. *Id*. at ¶ 5. Information about claims was entered into a database, and the documentation provided was reviewed to ascertain whether the claim fell within the class period and definition. *Id*. at ¶ 6.

If the Claims Administrator found a claim or part of a claim to be deficient, the Administrator mailed a letter entitled "Notice of Rejection of the Entire Claim" or "Notice of Rejection of Part of Your Claim" to the claimant. *Id*. at ¶¶ 7, 8. The letters described the claim's defects and what actions were required to complete the claim. *Id*. The letters further advised

claimants of their right to request the Court's review of the
administrative determination rejecting the claim.[3] *Id*. at ¶ 10,
Ex. A. The letters explained that a response to the letter was
the claimant's only opportunity to cure the deficiency, and that
in order to request the Court's review, the claimant would need
to provide a written statement to the Claims Administrator
setting forth the reasons for contesting the determination. *Id*.
at ¶ 16.

After all responses to the rejection letters were received
and evaluated and claims updated, the Claims Administrator sent
letters to claimants with still deficient claims that had a
potential Recognized Loss of $20,000 or more to provide them with
a final opportunity to fix their claim. *Id*. at ¶ 11.

The Claims Administrator calculated Recognized Loss amounts
according to the formula described in the notice of proposed
settlement. *Id*. at ¶ 12, Ex. B.

A total of 6,534 persons or entities filed claims, 6,003

---

[3]     The Stipulation includes the following paragraphs concerning the
rights of those whose claims are rejected:
      (e): If any Claimant whose claim has been rejected in whole or in
      part desires to contest such rejection, the Claimant must, within
      sixty (60) days after the date of mailing the notice required in
      subparagraph (d) above, serve upon the Claims Administrator a
      notice and statement of reasons indicating the Claimant's grounds
      for contesting the rejection along with any supporting
      documentation, and requesting a review thereof by the Court. If a
      dispute concerning a claim cannot be otherwise resolved,
      plaintiff's co-lead counsel shall thereafter present the request
      or review to the Court; and
      (f) The administrative determinations of the Claims Administrator
      accepting and rejecting claims shall be presented to the Court for
      approval.
Stipulation at ¶ 19.

timely and 351 untimely, of which 3,117 were provisionally accepted. *Id*. at ¶ 13. The total Recognized Loss of the accepted claims is $136,275,517.22, including $131,130,337.10 from timely claims and $5,145,180.12 from claims submitted after September 3, 2007. *Id*. at ¶ 25. The Claims Administrator has provided the Court with a list of authorized claims and their ultimate disposition, along with summary schedules for authorized and rejected claims. *See id*. at ¶¶ 26-28.

A total of 3,257 claims were rejected by the Claims Administrator in whole or in part for one or more of the following reasons: (1) the claim did not fit the definition of the class; (2) the claim was a duplicate claim; (3) a deficient claim was never cured; (4) the claim did not result in a Recognized Loss. *Id*. at ¶ 14. The Claims Administrator will continue to receive, review, and process any correspondence or information submitted by claimants with respect to already-filed claims, and will update the database with any new information or adjustments prior to disbursement. *Id*. at 15.

The Claims Administrator states that it has spent the time necessary to do a thorough job of processing claims and to protect the interests of the class. *Id*. at ¶ 29. The Claims Administrator provided class members with information and advice regarding documentation of claims. *Id*. The Claims Administrator used multiple means of communication to contact claimants, and

permitted claimants to respond by fax, e-mail, mail, and telephone. *Id*.

*Disputed claims*

To date, the Claims Administrator has received letters from 47 claimants contesting the administrative rejection of their claims. *Id*. at ¶ 16. Most of these claimants provided adequate documentation or information to complete the proof of claim and cure deficiencies. *Id*. The Claims Administrator communicated with all 47 claimants, as a result of which 37 withdrew their objections because they understood the determination or had submitted enough proof to complete their claim. *Id*.

On November 14, 2008, I directed the ten remaining claimants with disputed claims to show cause on January 8, 2009 why the administrative determinations rejecting their claims should not be approved. Claimant Chris Thomas was the only person to respond to the order to show cause. Mr. Thomas, along with three other claimants who had disputed the administrator's findings, was a shareholder in a company called Deterministic Networks, Inc. ("Deterministic"), which previously merged with Gilat. Shareholders in Deterministic received shares of Gilat stock as a result of the merger. Co-lead counsel for plaintiffs instructed the Claims Administrator to reject claims for stock gained as a result of a merger, on the ground that they did not fall within the settlement class definition. Mr. Thomas challenged this

determination on the ground that the class definition did not on its face exclude claims based on stocks acquired by merger. Before the return date of the order to show cause, Mr. Thomas and the lead plaintiffs reached an agreement, whereby eight shareholders in Deterministic were included in the settlement disbursement plan. *See* Stipulation filed January 20, 2009, ¶¶ 20-22.

There remain six unresolved claims. The Claims Administrator identified five claims that involved Gilat stock that was bought on or after February 10, 2000 and prior to 2 p.m. EST on March 9, 2001, and sold during that same time period. The Plan of Allocation itself states that losses resulting from such transactions shall result in no Recognized Loss. With regard to the sixth claim, the claimant did not provide proper documentation to complete his claim.

The following are details of the disputed claims:

Disputed Claim Number 1: The claimant purchased 150 shares of Gilat stock on October 5, 2000 and sold 150 shares of Gilat stock on October 27, 2000. In the request for Court review, claimant stated that she lost money on the sale, and should not be punished for selling shares too soon. *See* Riley Aff. Ex. C-1.

Disputed Claim Number 2: The claimant purchased 150 shares of Gilat stock on October 5, 2000, and sold 150 shares of Gilat stock on October 27, 2000. In the request for Court review,

claimant stated "recognized loss is the amount reported for income tax purposes." *See* Riley Aff. Ex. C-2.

Disputed Claim Number 3: The claimant purchased 600 shares of Gilat stock between February 29, 2000 and June 23, 2000 and sold 600 shares of Gilat stock between August 30, 2000 and December 27, 2000. In the letter requesting court review, claimants stated that they should be compensated because they purchased and sold Gilat stock within the class period. Affidavit of Ellen Riley dated October 27, 2008, Ex. C-7 ("First Riley Aff.").

Disputed Claim Number 4: The claimant purchased 8,800 shares of Gilat stock between February 22, 2000 and April 28, 2000, and sold 10,100 shares of Gilat stock between February 18, 2000 and April 12, 2000. Claimant submitted a letter from his bank stating that as of February 9, 2000, he owned 1300 shares of Gilat stock. All stock was sold prior May 2, 2000. Claimant stated in his claim that he owned 1000 shares at the end of the class period, which the Claim Administrator flagged as a claim whose numbers did not 'balance.' When the Claim Administrator notified claimant that he had no Recognized Loss, the Claimant submitted additional documentation stating that the bank made an error, and he had zero shares at the end of the class period. *See* Riley Aff. Ex. C-4. The claimant was sent an email in January, 2008 to discuss the request for Court review, to which the claimant has not

responded. Riley Aff. at ¶ 18.

Disputed Claim Number 5: The claimant purchased 300 shares of Gilat stock on May 9, 2000 and September 7, 2000 and sold 160 shares of Gilat stock on July 13, 2000. On February 16, 2001, claimant transferred 140 shares of Gilat stock to the First International Bank. The Claims Administrator sent claimant a notice stating that claimant must either state these 140 shares were held until the end of the claim period or provide details regarding their sale. Claimant has been called and a letter sent via email, to which claimant has not responded. Riley Aff. at ¶ 18.

Disputed Claim Number 6: The claimant transferred 25 shares of Gilat stock into his account after February 10, 2000. Retained these shares through at least May 31, 2002. The Claims Administrator informed claimant that he would need to provide documentation for the original purchase of the shares, including share price and trade date, in order to establish that he made purchases of Gilat stock during the class period. Claimant did not provide this information. An email was sent in March, 2008 explaining that the claim still showed no purchases within the class period, but claimant did not respond. *See* Riley Aff. at ¶ 19, Ex. C-6.

None of the claimants holding the six remaining disputed claims responded to my November 14, 2008 order to show cause why

the administrator's determinations should not be approved.

## DISCUSSION

### I. Disputed Claims

The Claims Administrator correctly determined that the six remaining disputed claims lacked merit. Claims 1, 2, and 3 concerned shares that were purchased after February 10, 2000, and sold before March 9, 2001. Under the terms of the settlement, if a claimant purchased shares during this period then sold those shares before the end of the period, there would be no Recognized Loss. Claimant 4 purchased 1300 shares of Gilat stock before February 10, 2000, purchased an additional 8,800 shares during the class period, and sold all shares before March 9, 2001. Because claimant 4 sold all shares that he bought during the relevant time period within that same time period, claim 4 lacks merit. Claimants 5 and 6 failed to provide the documentation required to establish that claimants purchased stock during the class period, despite several attempts by the Claims Administrator to retrieve this information. Claims 5 and 6 were therefore not entitled to recovery.

### II. Deterministic Claims

Claims by former holders of stock in Deterministic who gained shares in Gilat stock through a merger were properly included in the settlement fund, as their acquisition of shares met the class definition. Accordingly, the claimants who acquired

Gilat shares pursuant to the July 20, 2000 acquisition of
Deterministic fall within the class definition, even though they
were not purchased on the open market. Lead Counsel has
recommended that the Claims Administrator accept all claims for
those who acquired Gilat shares pursuant to the Deterministic
acquisition, which amounts to eight additional claims. These
claims are properly included in the settlement disbursement.

**III. Untimely Claims**

Plaintiffs request approval of payment of untimely but
otherwise authorized claims. A total of 178 untimely but
otherwise authorized claims have been submitted. The untimely
claims represent a total Recognized Claim of $5,144,622.81, out
of a total Recognized Claim for all authorized claims, whether
timely or untimely, of $133,225,633.22. Riley Aff. ¶¶ 23, 25.
Plaintiffs urge that "[t]he determination whether to allow the
participation of late claimants in a class action settlement is
essentially an equitable decision within the discretion of the
court... there is an implicit recognition that late claims should
ordinarily be considered in the administration of a settlement."
*In re Crazy Eddie's Sec. Litig.*, 906 F.Supp. 840, 843 (E.D.N.Y.
1995). Plaintiffs state that untimely filing of these claims has
not caused significant delay to the distribution of the net
settlement fund or otherwise prejudiced any claimant, and that
these late claims should be approved. *See id.* at 845. Because

there is no showing of delay or prejudice, the late filed claims should be included in the class for settlement disbursement.

**IV. Claims Administrator's Request for Fees**

The Claims Administrator requests that it be paid its final fees and expenses. Pursuant to paragraph 8 of the Stipulation and paragraph 7 of the Final Judgment, $300,000 has already been approved by the Court and Paid to the Claims Administrator. The Claims Administrator states that it has now processed all claims and has determined its final fees and expenses for such processing and for distribution of the Net Settlement Fund. Riley Aff. ¶ 30. The total amount of the Claims Administrator's final fees and expenses relating to the administration of the Settlement Fund, which includes the amounts for giving notice of the Settlement to the Class, processing claims, paying taxes on the Gross Settlement Fund, and distributing the Net Settlement Fund to the claimants, is $657,754.56. *Id*. Lead Counsel requests approval of payment of the remainder of the fees and expenses not yet paid, amounting to $357,754.56, stating that the fees and expenses are reasonable and necessary to administer and distribute the Net Settlement Fund. The Claims Administrator has performed a thorough review of the settlement claims, has labored to determine the validity of all claims fairly, and has provided documentation of its fees. The Claims Administrator should be paid the requested amount.

**V. Distribution of the Net Settlement Fund**

Pursuant to the Stipulation of Settlement and the Plan of Allocation, the settlement funds, net of previously awarded attorneys' fees and expenses, have been held in escrow by plaintiffs' lead counsel, pending completion of the claims administration process, approval by the Court of the Claims Administrator's final determinations regarding any disputed or late-filed claims. *See* Stipulation at ¶ 7. Lead plaintiffs request authorization to distribute the fund to eligible class members.

The Claims Administrator has made diligent efforts to identify and assess claims, and has calculated the appropriate recovery for each claimant according to the settlement agreement. The Claims Administrator has further prepared a schedule of disbursement. The ten claimants who disputed the Claims Administrator's rejection of their claims had an opportunity to state their case before me pursuant to my November 14, 2008, order to show cause. Only one claimant made a submission to the court, and his claim has been addressed through a stipulation between the parties. The remaining claimants did not appear, and their claims have been properly found to lack merit. Accordingly, I find that the terms of the settlement agreement have been complied with, and the lead plaintiffs are authorized to distribute the fund to eligible class members according to the

determinations of the Claims Administrator.

**VI. Release From Liability and Prohibition Against Additional Claims**

Any further claims against the net settlement fund are barred. All persons involved in the administration of the fund are released from any claims arising out of their involvement.

**VII. Disposition of Any Unclaimed or Uncashed Balance**

Plaintiffs state that it is expected that not all payments to be distributed to class members will be cashed promptly. In order to reduce future expenses relating to unpaid distributions, plaintiffs propose that all distribution drafts bear a notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE." This is a reasonable precaution, given the danger to finality of the settlement if claimants delay in cashing their settlement checks.

Plaintiffs further request that any balance that may remain in the net settlement fund one year after the initial distribution, whether by reason of un-cashed drafts or otherwise, be used: (a) first, to pay any amounts mistakenly omitted form the initial distribution to authorized claimants or to pay late but otherwise valid and fully documented claims received after the cut-off date used to make the initial distribution, which were not previously authorized to be paid, provided that such distributions to any late post-distribution claimants meet all of

the other criteria for inclusion in the initial distribution; (b) second, to pay any additional settlement administration fees and expenses, including those of co-lead counsel as may be approved by the Court; (c) third, to redistribute the funds to class members who have cashed their checks and who would receive at least $5.00 from each such redistribution, if after payment of the estimated administrative costs, such second distribution is economically feasible; and (d) fourth, six months after any such redistribution, to contribute any remaining balance to non-sectarian, not-for-profit 501(c)(3) organization(s) designated by agreement of plaintiffs' co-lead counsel and counsel for defendants. In the absence of agreement, the parties may apply to the court for designation.

The Plan of Allocation provides for the redistribution of unclaimed funds to class members who have cashed their checks and, six months following such redistribution, for the donation of any remaining funds to charity. There is no provision in the plan for use of unclaimed funds to pay late claims and administrative fees. However, allocation of the unclaimed funds to late claimants and for administrative fees would not affect the recovery of any claimants who timely filed their claims. It is reasonable to use the unclaimed funds to pay additional administrative costs and to permit late-filing claimants to recover for their losses. The reference to charity refers

presumably to the same 501(c)(3) institution or institutions referred to above. Plaintiffs' proposal for distribution of unclaimed funds is accepted.

## VIII. Records Retention and Destruction

The Claims Administrator shall be permitted to destroy paper copies of the proofs of claim one year after distribution of the net settlement fund and to destroy electronic copies of the proofs of claim three years after distribution of the net settlement fund. Retention of documents for up to three years permits the resolution of issues that may arise following the disbursement without creating an undue burden for the Claims Administrator.

### CONCLUSION

For the reasons set forth above, the motion to authorize disbursement of the settlement funds and for payment of the claims administrator is granted, as set forth in the accompanying Order. The Clerk is directed to transmit a copy of the within to all parties and to the assigned Magistrate Judge. Lead plaintiffs are directed to transmit a copy of the within to claimants whose claims are rejected in this order.

SO ORDERED.

Dated:     Brooklyn, New York
           March 25, 2009


                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge